Ben McKinney

*v.*

State of Tennessee.

(*Knoxville,* September Term, 1958.)

Opinion filed December 12, 1958.

280

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

FRANKLIN PARK, Jefferson City, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This appeal is from the Criminal Court of Hamblen County. The indictment upon which the plaintiff in error was brought to trial charged him with assault with intent to commit the crime of murder in the first degree.

The jury after hearing the evidence and charge of the court returned in open court and reported, as follows:

"* * * upon their oath do say that they find the defendant, Ben McKinney, guilty of 1st degree man-

slaughter and for his punishment that he undergo confinement in the State Penitentiary for a period of two (2) years. Jury was sent out into the Jury room. When they returned Court asked them if they had agreed upon their verdict and they reported they found the defendant guilty of assault with attempt to commit 1st degree manslaughter.''

A motion for a new trial was seasonably filed and overruled, resulting in this appeal.

The several assignments set out in the motion for a new trial are made the basis for the assignments of error to the action of the trial court in overruling the motion. The assignments are, as follows:

''The evidence preponderates against the verdict of the jury.

''The verdict of the jury finding the defendant 'Guilty Of Assault With Intent To Commit First Degree Manslaughter And Fixing His Punishment At Two Years Imprisonment', was not a proper verdict under the charge of the Court, the testimony and the language of the indictment.

''The Court was in error in interrupting the proceedings in the trial of a felony, while the defendant was on the witness stand, and calling before him a defendant who had been acquitted and delivering a lecture to her in the presence of the jury about the criminals and law violaters at Roe Junction, when the plaintiff in error happened to live there. This laid a predicate and basis for the conviction of the defendant because he was from Roe Junction. The comments and off the cuff remarks of a trial judge as a general rule have a great-

er effect upon the minds of jurors than the law and the testimony. It is a bad practice for the Court to interrupt a civil trial for extraneous matters, but when a defendant is on trial for a felony, and is on the witness stand the case should proceed without any interruption which would affect or distract the mind of a jury."

We think there is material evidence to support the verdict of the jury. In fact, we feel that the evidence preponderates in favor of the defendant's guilt of an assault with intent to commit voluntary manslaughter. There is little dispute as to the facts upon which the jury returned its verdict.

The defendant and one Frank Smith began to drink during the day, and they were riding in the defendant's car early in the afternoon of the day, to-wit, October 3, 1957. From the evidence we think both the parties were under the influence of intoxicating liquors. About 8:00 or 8:30 o'clock P.M. the defendant parked his automobile a short distance from his own home. The prosecutor, Frank Smith, was in the act of disembarking from the defendant's car when the defendant became infuriated at the prosecutor for some unknown reason and suddenly took from the floor board of his car, underneath where he was sitting, a .12 gauge single barrel shotgun and fired it into Frank Smith's chest and the muscle of his arm, and according to the prosecutor's statement, he said, "damn you, I will just kill you." After shooting Smith the defendant admonished him to "hush or I will give it to you again." There is some evidence that the defendant fired a second shot but it did not strike the prosecutor. However, this is not material to the controversy. The proof shows without dispute that these two men had been

friends for a good period of time, and this fact makes it difficult for us to understand why this assault should have taken place.

The defendant's contention is that he and Smith became engaged in a disagreement prior to the time the shot was fired and that Frank Smith reached over to the backseat of the automobile to get hold of the gun and that thereupon the two men scuffled for possession of it. It is thus a part of his theory that he was not responsible for the shot since it was fired accidentally. The jury evidently discredited the defendant's theory and found that the shot so fired was intentional, especially in view of the prosecutor's statement that when the shot was fired the defendant stated, ''damn you, I will just kill you.'' We can thus see from the testimony that there was a sharp contradiction between the parties as to this difficulty, and the jury having credited the State's proof as worthy of belief, and since there is material evidence to support the State, the assignment of error based on the testimony must be overruled.

■ Coming now to the report of the jury, it appears without dispute that when the jury first came into court they reported that they found the defendant guilty of ''1st degree manslaughter''. This report was not accepted by the trial judge because it was manifestly not responsive to the charge in the indictment, nor was it responsive to the evidence in the case. The trial judge directed that they retire and consider further the issues, and, having done so, the jury returned into court and reported their verdict that they found the defendant ''guilty of assault with attempt to commit 1st degree manslaughter'' and assessed his punishment accordingly.

This verdict of the jury was accepted by the trial judge and the jury was discharged.

We think the use of the words "1st degree" as a prefix to the words "manslaughter" is pure surplusage and amounts to nothing. There are no degrees of manslaughter under the statute, except voluntary manslaughter and involuntary manslaughter, and there is no such offense as an attempt to commit involuntary manslaughter. The following contention of the State is not seriously in dispute and is, as follows:

"* * * The State contends that since there is no such offense as 'involuntary manslaughter' (*Shorter v. State,* 147 Tenn. 355 [247 S.W. 985]) there is nothing indefinite about this verdict because the only offense that the jury could have had in mind was that of an assault with intent to commit manslaughter."

■ Considering finally assignment of error No. 4, relating to the action of the trial judge in lecturing a Mrs. Collins in open court and in the presence of the jury then considering the instant case, we think it was entirely out of place for the learned trial judge to undertake to lecture Mrs. Collins during the process of this trial, but there is nothing in the record to indicate that the jury was prejudiced thereby. While it could have influenced the jury in a way, yet we must indulge in pure speculation on that point since no juror claimed to have been influenced by the trial judge's remarks.

It appears that Mrs. Collins had been acquitted of some charge and the trial judge in substance stated to her she must not think because she had been acquitted by the jury that she had a right to consider and engage in other

similar acts which involved the peace and good order of the community in which both she and the defendant resided. He admonished her that she must obey the law. Now, while the jury heard the foregoing lecture, as well as others attending the trial, we think it does not constittute reversible error.

All the assignments of error are overruled, and the judgment of the trial court is affirmed.